# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT, DECEMBER TERM, 1834.

[PHILADELPHIA, JANUARY 12, 1835.]

## BENNETT *against* MORRIS.

### CASE STATED.

Testator devised to his daughter *C.* when she came of age, " to be hers during her natural life: and then to be her only heir during its life."
*C.* was the sole heir of the testator at his death.
Held, that the devise to *C.*'s heir was not void for uncertainty; that *C.* took an estate for life, with contingent remainder for life to the person who should be her heir,—heir being *designatio personæ*: and that the remainder was defeated by a bargain and sale in fee simple made by *C.* which united her estate for life, and reversion in fee, so as to make one entire estate in the vendee, incapable of afterwards opening so as to let in the contingent remainder.
*Quere.* Whether under a gift or devise to *heir* or *heirs* in Pennsylvania, the heir at common law, or heirs according to the Intestate act, be entitled?

THIS was a case stated for the opinion of the Court.

Both parties claimed under the will of *Richard Whitman,* the maternal grandfather of the plaintiff; which as far as it was material to the case, is as follows : " I leave and bequeath my only daughter, *Charlotte,* my house and land I now possess, and likewise any thing that is coming to me of my father's estate, let it be more or less. I leave it to my said daughter to be hers when she comes of age. And likewise I leave my Brother *Nathan* to be my whole and sole executor of my estate, and to act for my daughter in rectifying my effects, &c.; and for my house and land I now live on, he is to rent it out

(Bennett *v.* Morris.)

in the best manner he can, till *Charlotte* comes to age, then it is *hers during her natural life; and then to be her only heir* during its life: and the rent of the said place before she comes to age, is to bring her up on, and to keep the place in repair till she is of age."

*Charlotte*, the devisee, intermarried with *Jacob Bennett*, and had issue, eight children, of whom the plaintiff was the eldest.

*Jacob Bennett* and wife, by deed dated *April* 28th, 1812, conveyed the premises in question to *William Davidson* in fee, who devised them to his widow and children, under whom the defendants were in possession as tenants for years.

*Charlotte* was sole heir of the testator at his death.

*Kittera*, for the plaintiff:—

*Charlotte* took by the will an estate for life, with contingent remainder to her heir during life, and the reversion being undisposed of, descended on her as sole heir of the testator. The word *heir* in the clause creating the remainder is *designatio personæ*, and means such person or persons as at her death shall answer the description of her heir at law; either the eldest son of *Charlotte* living at her death, or all her children, according to the construction which the Court shall put upon the will. The plaintiff is her eldest son, and heir at common law, but is willing that his brothers and sisters may come in, if such a construction can be allowed. The intermediate life estate is not affected by her having a life estate, and also the reversion. A devise to one who is heir for life, the remainder in contingency, is good, and the descent of the reversion shall not drown the estate for life. *T. Raym.* 28, *Plunket* v. *Holmes.* 2 *Ro.* 425, *The Sergeants' case.* If the devise to the daughter had been followed by any words of inheritance introduced into the subsequent devise, it would have been an estate in fee or in tail, according to the mode of expression. But the estate to her is for life, and the succeeding estate is for life. Of course whoever takes under this clause of the will, takes by purchase. Heirs taking always as heirs, and through an ancestor, wherever the word heirs is used in a will, but so limited and restricted as to show the intention of the testator, not to employ the term in its legal signification, as if it be heirs, equally to be divided among them, or heirs then living, or heirs for life as here—the term means children. 8 *Petersdorff Ab.* 264. tit. *Devise. Id.* 165. 4 *Dessaus.* 459. The word heir construed to mean *child.* 1 *Dall.* 4, *Ashton* v. *Ashton.* Devise to first heir male of *J. S.* Held, that the first son of *J. S.* took. The plaintiff is the person who answers this description—he is heir at law of *Charlotte.* The testator used the word heir in the singular number. He says during *its life*, referring to one. If heir means child—or the singular number restricts it to one—or the plaintiff answers the description, he would take. But if *heir* is to receive a technical construction, then if this

(Bennett *v.* Morris.)

devise had been carried out by words of inheritance, or what in a will is equivalent, such as *in perpetuum,* &c. it would have been an estate tail in *Charlotte,* and the limitation for life coming in, would give it by designation, to such person as would have taken it in tail. ' To be her only heir,' is equivalent to heirs of her body. Heirs is often confined to heirs of the body. *Petersd. Abr.* 248. *ld.* 267. 1 *Cov. & Hughes' Dig.* 519, § 5, 6, 7. 3 *Binn.* 374, *Hall* v. *Vandegrift,* and cases there cited. So that according to legal construction, the tenant in tail, who here is the same as the plaintiff, would be entitled to take.

But if heir is not to be confined to the heir at common law, then all the heirs or children of children of *Charlotte,* who would be heirs under our intestate laws, are entiled. In *Thompson* v. *M'Clenachan,* 17 *Serg. & Rawle,* 115, HUSTON, Justice, considers it strange, that since 1684, it should be doubted that *heir* means such as would inherit by the intestate laws of *Pennsylvania.*

*Scott,* for the defendant :—

The daughter took only a life estate; so the devise to her only heir does not create an estate tail as contended by the plaintiff, because being limited during its life, it expressly excludes the idea of succession.

*Haddon's case,* cited *Moore,* 372, was a devise to one for life, and so afterwards to every person who should be his heir for life only; and it was adjudged to carry an estate in possession to the tenant for life, with a remainder for life to the next heir, and nothing more. *Saville,* 75. *Cro. Eliz.* 40. 2 *Leon.* 35. 6 *Rep.* 17. 6 *Mo.* 121. 2 *Bulst.* 180. To the same point, *Preston on Est.* 554. In *England* the words *only heir* might perhaps be interpreted to mean *eldest son.* In *Pennsylvania,* however, there is no reason for putting such an interpretation on these words. Nothing in the history of property, or customs of the people from the earliest day sanction it. Primogeniture was abolished from the first, except so as to give the eldest son a larger share, until 1794. If therefore *only heir* has any meaning, it must mean all who together take an entire inheritance, and fill the place of an heir. Then we have an estate for life to *Charlotte,* with contingent remainder to her children for their lives, and a remainder in fee undisposed of, and therefore descending on *Charlotte,* as right heir of the testator. The effect of this descent was—

1. That the estate in fee vesting directly in the tenant for life, before any child was born, merged the life estate, and thereby vested in her a fee which passed by the conveyance to *Davidson.* On this point he cited *Fearne on Cont. Rem.* 264. 241. *Cro. Jac.* 260. 1 *Bulst.* 61. *Kent* v. *Harpool, T. Jones,* 76. *Hooker* v. *Hooker, Rep. temp. Hardw.* 11. *Plunket* v. *Holmes,* and *Boothby* v. *Vernon,*

(Bennett *v.* Morris.)

are distinguishable, the contingent remainders preserved being estates of inheritance.

2d. The conveyance by *Charlotte* and her husband to *Davidson*, created an union and consolidation of the life estate and reversion, so as to destroy the contingent remainder. *Fearne on Rem.* 247. 3 *Preston on Convey.* 441. This is the act of the tenant for life and reversioner, and is not subject to the exception set up where the merger is claimed under the meeting of a devise and a descent from the same person, or where the particular estate and the fee are given to the same person by the same instrument. It is one of the class of cases in which the tenant of the particular estate has the absolute power at his own option to destroy a contingent remainder. This is a power of the exercise of which nobody can complain, because there is nobody to complain, all being in contingency, and a power peculiarly suited to the genius of our institutions.

The opinion of the Court was now delivered by

KENNEDY, J.,—who after stating the will and facts proceeded:— It is proper in the outset to inquire what estate *Charlotte* took under the will; and this will depend upon what was the intention of the testator, which is to be collected from the words of the will itself. Having once discovered his intention, it will be the duty of the Court to carry it into effect by their construction of the will, unless found to be repugnant to, or inconsistent with some established principle or rule of law. By the terms of the will, the devise of the land to the daughter is limited to her expressly for life. This limitation, although express, would not perhaps be sufficient to take this devise out of the operation of the rule recognized and laid down in *Shelly's Case*, seeing there is a remainder over limited by the will to her *heir*. *Pauly* v. *Lowdall*, Sty. 249. 273. *Dubber* v. *Trollcp*, 8 *Vin.* 233, tit. *Devise*, U. a. pl. 13. *Moor* v. *Parker*, *Skin.* 559. *Robinson* v. *Robinson*, 1 *Burr.* 38. But to this remainder to her heir there is also superadded an express limitation for the life of such heir, which goes to show clearly that the testator did not intend by his will to give to his daughter a fee-simple estate in the land, but that she should have barely an estate for her life; and that her heir or heirs, whoever he, she, or they might happen to be at her death, should take by purchase a remainder for life also. Besides, if he had intended that his daughter should have the fee in the land, it was unnecessary and useless in him to have made a will for that purpose, because she would have taken it by operation of law without.

The word "heir" then could not have been used here by the testator with a view to set forth the nature and *quantum* of estate intended to be given to his daughter, but for the purpose of describ-

ing the person who should have the remainder for life in the land after her death. It was meant by him to be understood as a *descriptio personæ*, as in *Haddon's Case*, where the testator " devised to one for life, and so afterwards to every person that should be his *heir*, for life only," and it was adjudged in the Common Pleas to carry an estate in possession to the tenant for life, with a remainder for life to the next heir, and nothing more. Cited *Moore*, 172. And per WRAY, C. J. in *Manning* v. *Andrews*, 1 *Leon*. 258, " If a devise be made to one for life, and then to his heir for life, and so from heir to heir *in perpetuum* for life, here are *two* estates for life, and the *other* devisees have a fee ; for estates for life cannot be limited by general words from *heir to heir*, but by special words they may." Having now shown that the word " heir" in the case under consideration, must be construed a word of purchase and not of limitation, it in the next place becomes material to determine whether the remainder for life given to the *heir* of the first devisee, was vested or contingent. It is certain that the daughter could have no heir during her life, for the rule of law in this respect is *nemo est hæres viventis*. As no person then could become her heir during her life, it was altogether uncertain who might happen to be her heir at her death. And in *Archer's Case*, 1 *Co*. 66, where Sir *Francis Archer*, having devised lands to his son *Robert* for life, and after, to the next heir-male of *Robert*, and to the heirs-male of the body of such next heir-male ; and *Robert*, after the death of the testator, having issue a son, made a feoffment to *John Kent*, upon whom the son entered, it was held, that the remainder to the next heir-male of *Robert* was contingent, and could only vest in the son personally, in the event of his surviving his father ; for until then he could not be his heir, according to the maxim already repeated : And it was further adjudged, that *Robert*, by his feoffment of the land, put an end to his life estate under the will, which supported the contingent remainder given to his next heir-male, and consequently thereby destroyed the remainder. So in *Moore* v. *Parker, Skin*. 559, ROLL, Chief Justice, lays it down, " if a devise be to a man for life, and after to his *heir*, this is an estate in fee ; but if it be to the heirs of *such heir*, such devise then is a *contingent* remainder ;" the word " heirs" in this latter case being engrafted on the word " heir," renders it as in the case at bar, a *designatio personæ*, or word of purchase, and makes it altogether uncertain during the life of the first devisee, who the person may be that will answer to the description of his heir at his death, and hence the remainder limited to such heir is contingent, on account of the uncertainty of the person who is to take it. From the authorities, then, on this subject, as well as from the nature of the devise over in the case before us, it appears, without any doubt, to be a contingent, and not a vested remainder, limited to the *heir* of the daughter for life.

The remainder to the heir of the daughter being shown to be con-

(Bennett *v.* Morris.)

tingent, the next question which seems to present itself is, what effect did the deed of bargain and sale executed by the daughter and her husband, *Jacob Bennett,* to *William Davidson,* conveying the land in fee simple to him, produce upon it.   And here it must be recollected, that the daughter being the testator's only child and heir-at-law, the reversion in fee of the land descended to her at the decease of her father, and continued in her until she and her husband afterwards made the deed of conveyance to *Davidson.* Now, although, according to the cases of *Archer,* (already mentioned), *Plunkett* v. *Holmes, T. Raym.* 28, and *Boothby* v. *Vernon,* 9 *Mod.* 147, it cannot be considered that such descent of the inheritance from the testator to the party taking the life estate in possession under his will, which also limited the contingent remainder, will create such a union of the two estates as will destroy the contingent remainder ; yet it does not follow but that a deed of conveyance made by the party so invested with the life estate and the reversion in fee, may produce that effect.   Mr. *Fearne,* in his essay on Contingent Remainders, p. 343, 3d American, from the 8th London edition, after noticing the cases on this subject, in which there is a seeming difference of opinion, thinks they may be reconciled by taking the distinction, that in cases where the descent of the inheritance is *immediate* from the person, by whose will the particular estate and contingent remainders are limited, (as in the cases last cited,) the descent of the inheritance does not destroy the contingent remainders ; but in cases where the particular estate and contingent remainders are not created by the will of the ancestor from whom the inheritance immediately descends on the particular estate, (as in *Kent* v. *Harpool, T. Jones,* 76. S. C. 1 *Ventr.* 306. *Hooker* v. *Hooker, Rep. temp. Hardw.* 91); there the remainder is destroyed.   This distinction seems to have been recognised in *Crump* v. *Norwood,* 7 *Taunt.* 362, where the case in substance was that of a testator, who devised an estate for life to his nephew, limiting a contingent remainder in fee to the heirs of the body of such nephew, if more than one, to be equally divided among them as tenants in common, but if he should die without such issue, or leaving any such, they should all die without attaining twenty-one, then to his own right heirs.   On the testator's dying, one moiety of the ultimate remainder in fee descended to the father of the nephew, being one of the testator's two heirs in gavelkind, and from the father again to his son the nephew and devisee for life of the testator ; and held, that by the descent of the fee thus to the nephew, his life-estate under the will became merged in the fee, and that the contingent remainder depending upon it for support, was thereby destroyed.

The distinction indeed, taken by Mr. *Fearne,* seems to be necessary, in order to give some effect to the will of the testator, otherwise in every case where he limits a particular estate for live, to his heir at law, with a contingent remainder over, without any ulterior vest-

ed remainder, the particular estate can never take effect, because the moment it comes into existence it would be destroyed by its union with the reversion in fee, and being thus destroyed, the contingent remainder must likewise necessarily fall with it for want of support. This would, as Mr. *Fearne* very justly observes, be making the will in this respect *ipso facto* void. But still, notwithstanding this distinction may be right in order to give effect to the will, according to the intention of the testator, it does not change the nature of the particular estate, limited by the will, nor render it in any respect different from what it would have been, had it been created by any other means. It remains liable in the same manner to the operation of all acts of the tenant for life, at least, if not to all future accidents by which such an estate is generally destroyed; such as forfeiture, merger, &c. Now although the fee in this case desended in such sort to the daughter, as heir, being devisee for life under the will, so as not to confound the estate for life, but to leave an opening for the remainder to come in, upon the happening of the contingency connected with it, yet it appears to me that the operation of the deed of conveyance, made by the daughter and her husband *Jacob Bennett* to *William Davidson,* was such as to unite and consolidate the estate for life, with the reversion in fee in such manner as to make it one entire estate in fee in the vendee, incapable forever after of being separated or opened so as to let in the contingent remainder, and consequently to destroy it. I do not consider it a sufficient objection to this conclusion, that the intention of the testator as regards the contingent remainder, may be thus indirectly frustrated by it; because it must be presumed that he was acquainted with the law on this subject, as he was bound to know it; and that unless he introduced trustees into his will for the purpose of preserving the contingent remainder, that he left it in the power of the devisee of the particular estate, to defeat the contingent remainder, by destroying the particular estate. It might as well be objected that a common recovery suffered, ought not to be held to bar the heir in tail of his right in such estate, where it has been created by will, because it will defeat the intention and frustrate the will of the testator. But the conclusion to which the court has come, in respect to the effect and operation of the deed of conveyance, from the daughter and her husband, to *Davidson,* is not only sustained by the principles laid down and decided in the cases already mentioned, but the very case itself, is put by Mr. *Butler* in his notes to *Fearne on Contingent Remainders,* 322, 3d American from the 8th *Lond.* ed. where he says, " if a bargain and sale, and lease and release be made to the person who has the immediate vested reversion or remainder, or if the tenant for life and the immediate remainder-man or reversioner join in the conveyance, or the *tenant for life* who *makes the conveyance,* has the remainder or *reversion,* the *bargain and sale* or lease and release will *destroy* the *remainder.* For in

(Bennett v. Morris.)

each of these cases, the conveyance operates as an union or consolidation of the two estates, and the contingent remainder is necessarily destroyed by the determination of the particular estate, on which it depends." The case here last stated is identically the same, with the one before the court. And it will not be denied that a deed of bargain and sale, such as was made by *Bennett* and his wife, duly acknowledged, certified and recorded in conformity to our acts of Assembly, passed in this behalf, is of as great force and efficacy at least, if not still greater, than a bargain and sale, or lease and release in England. For by our act of the 28th of May, 1715, *Purd. Dig.* 195, it is enacted that all deeds and conveyances of lands, tenements and hereditaments in this province, made or to be made, and proved or acknowledged and recorded as therein directed, shall be of the same force and effect here for the giving possession and seisin, and making good the title and assurance of the lands tenements and hereditaments, as deeds of feoffment with livery and seisin, or deeds enrolled in any of the king's courts of record at Westminster, are or shall be in the kingdom of Great Britain. And again, by the act of the 24th of Feb'y, 1770, *Purd. Dig.* 197, a deed of bargain and sale, made by a husband and wife of the lands of the wife, when acknowledged and certified in the manner therein prescribed, is declared to be as good and valid in law to all intents and purposes, as if the wife had been sole and not covert at the time of the sealing and delivery thereof. And though a deed of bargain and sale made by a tenant for life, purporting and intending, to convey the land in fee in Pennsylvania, acknowledged and recorded agreeably to the act of 1715, does not as has been held, create a forfeiture of the life estate, *McKee's Lessee* v. *Pfout*, 3 *Dall.* 489, yet I apprehend that according to the very terms of the act, it has all the force and efficacy of a deed of feoffment, accompanied by livery and seisin, for the purpose of assuring and securing to the vendee, the fee simple estate in the land. The destruction of the contingent remainder *in this case*, was *not*, therefore, produced by forfeiture of the particular estate, which supported it, but by the particular estate or vested estate for life, becoming, through the operation and effect of the deed of conveyance from *Bennett* and his wife to *Davidson*, so united and incorporated with the fee in *Davidson* as to be entirely and completely lost and determined. This then being the case, the plaintiff can have no right or claim to the land in dispute.

It was objected that the clause in the will, by which the remainder over is limited, is unintelligible and void for uncertainty. The words of it are, " and then to be her only heir during its life." A devise is never construed absolutely void for uncertainty, except from necessity; for if there be a possibility of reducing it to a certainty it is good. 1 *Powel on Devises*, (by *Jarman*,) 370. Hence words in wills have been *transposed*, *supplied* and *changed*, in accord-

(Bennett v. Morris.)

ance with the context. *Ibid.* 371 *in notis.* and the cases there referred to. In an anonymous case, 1 *And.* 33, where a devise was made to *A.* and the heirs of his body, "and if he should die," then a remainder over was given; and the court supplied the words "without issue," so as to make it read "and if he should die *without issue.*" So in *Sheppard* v. *Lessingham, Amb.* 122, "without issue," was read "without *leaving* issue." Also in *Kirkpatrick* v. *Kirkpatrick,* 13 *Ves.* 476, the words "under twenty-one" were supplied. And in *Keith* v. *Perry,* 1 *Dessaus.* 354, the word "her" was changed by the court into "their." And in like manner "or" has been construed "and," and *vice versa,* in cases almost without number, collected by *Jarman* in his note to 1 *Powell on Devises,* 379, 380. Now by supplying the word "to" in the case before us, so as to make the clause containing the devise over read, "and then to be *to* her only heir during its life," it is rendered perfectly intelligible, as to whose heir was meant, and made to accord with the intention of the testator as clearly disclosed by the context: or by placing the word "heir" in the possessive case, so as to make it read, "and then to be her only heir's during its life," will relieve it from all obscurity, in respect to whose heir was intended, and give to it the same meaning as by supplying the word "to" in the manner suggested.

But in regard to the further uncertainty in this clause, as to the person or persons intended to be described by the word "heir," it appears to me, that it presents a question not altogether free from difficulty, whether the testator meant heir at common law, or heirs according to our acts of intestacy. There is nothing, however, in this which could affect the devise on the ground of uncertainty. It presents merely a question of construction, whether the one description of heirs or the other were intended by the testator, and would have to be decided by the court, if it were necessary to determine the cause.

In England, if lands be given either by deed or will to the heirs of a particular person, though they be customary lands, such as gavelkind or borough-english, the heir at common law, is presumed to be meant, unless special words are used to describe the customary heir: but if special words are used, the presumption fails, and then it is said that the customary heir shall be preferred, though the subject of the gift should be common-law-land. *Co. Lit.* 10 *a,* and *Hargrave's* note, 4. *Co. Lit.* 24, *Harg.* note 3.

It may be that for the same reason that the heir at common law is presumed to be meant in England, that heirs according to our acts of Assembly, ought to be presumed to be meant here in such case. And it would seem, that upon this principle, it was decided in Connecticut in the case of *Larabee* v. *Larabee,* 1 *Root,* 555, that under a devise to a man, "and the next male heir of his body," all the sons of the devisee were entitled to take. But in our case it may be thought that the words "only," and "its," which have been

(Bennett v. Morris.)

introduced by the testator, possibly for some purpose, in connection with the words " heir" in the singular number, were meant by him to exclude plurality, and to describe the heir at common law. "To her *only heir* during *its* life," are certainly words strongly expressive of unity, and singleness. The word " its," though not very applicable to a person out of the first stage of infancy, is very frequently and properly used in reference to a child of that early age; and it possibly may be, that the testator when he used it, was thinking of giving the land to the first-child his daughter should happen to have, to take as soon as born; or more likely it may have arisen from a want of capacity to commit his meaning in appropriate terms to paper. I need not however, speculate further on this point, as it is unnecessary to decide in this case, what description of heirs shall be considered as meant in the case of a gift or devise to the *heir* or *heirs* of a particular person. I do not know that this question has ever been decided in this state; neither do I intend to intimate an opinion upon it; indeed I cannot say that I have formed any as yet with which I am perfectly satisfied.

Judgment for the defendants.