Mr. Justice James
delivered the opinion of the court.
In 1841 one John A. Wilson died seized and possessed of certain lands in the city of Washington, and devising the same in the following words:
“ I give, bequeath and devise to my sister, Mrs. Henrietta Burgess, and her son, Dr. John E. Craig, as joint tenants during their joint lives and the life of the survivor of them, the lands and premises in which I now reside, called “ Cazanova,” including all my estate and interest in all the lands now enclosed by me, lying in tbe city of Washington, between T street north and tbe northern boundary line of *461 the said city, and between Second and Third streets east, and if the said John E. Craig shall hereafter marry and die, leaving lawful issue of such marriage or marriages, or the lawful descendants of such children, and such lawful issue, or their lawful children, shall be in being at the time of the death of the survivor of the said John E. Craig and Henrietta Burgess, then I give, bequeath and devise to such issue and children, the said lands and premises to them and their heirs in fee simple, but if the said John E. Craig shall die without having been married and without leaving such-lawful issue, or the children of such lawful issue surviving him, then the said lands and premises to go to my right heirs.”
The testator left surviving him, as his only heirs at law, his two sisters, Susan M. Burche and the said Henrietta Burgess.
Mrs. Burgess died in 1844. In 1847 Dr. Craig, the surviving tenant for life, married, and of that marriage the plaintiffs (excepting the husbands, who are joined in this action) are the lawful issue.
By deed, dated September 29, 1848, and recorded June 1, 1850, Mrs. Burche conveyed to Dr. Craig all her interest, either as heir at law or devisee under the will of John A. Wilson, in the property in controversy; and, by deed of the same date and record, Craig conveyed the premises to one McLaughlin, and such right and title as McLaughlin acquired was, by several mesne conveyances, finally vested in the defendant, Warner, the present occupant.
John E. Craig died in 1874, leaving surviving him the immediate issue of his marriage, the plaintiffs in this case, who claim title on the ground that their father had only a life estate in the premises, and that the remainder vested in them during that estate.
Verdict and judgment were for the plaintiffs, and upon the defendant's motion for a new trial on exceptions to the rulings of the court, the case now stands for hearing in this court.
The effect of these rulings at the trial is, that Dr. Craig *462 took, by tbe will, an estate for life, with contingent remainder to his unhorn children ; that the .event occurred while the life estate was in existence, and that thereby an estate in fee simple vested in such children. The proposition on the part of the defendant, raised by his exceptions, are, first, that, under the rule in Shelley’s case, Dr. Craig took an estate tail by the will, that by the acts of Maryland of 1782, ch. 23, and 1786, ch. 86, this was turned into a fee simple, and that consequently there could not be any remainder; and, second, that if, on the other hand, he took only a life estate by the will, with contingent remainder, the fee simple was in Mrs. Burgess and Mrs. Burche, either by way of reversion as heirs at law of the testator, or by way of remainder limited to them by the will, and that he afterwards acquired this fee simple, in part by descent from his mother, Mrs. Burgess, and in part by Mrs. Burche’s deed of grant, bargain and sale, while the remainder to his children was still contingent, that the life estate on which that remainder had depended was thereby merged, and that consequently the remainder became impossible and was defeated, the whole estate being now in Dr. Craig.
It should be observed here that the instructions asked by the defendant, and refused by the court, raised' the question of merger separately as to the moities of the reversion or remainder derived from Mrs. Burgess and Mrs. Burche respectively ; claiming, that is to saj^, that if Dr. Craig took Mrs. Burgess’s interest by descent, the plaintiffs could not recover as to that moiety, and that if he took Mrs. Burche’s interest by her deed, they could not recoveras to that moiety of the premises.
We proceed to consider first whether Dr. Craig took under the rule in Shelley’s case, an estate-tail; and for that purpose it is convenient to restate the provisions of the will. In doing so, we shall use terms which we conceive to be equivalents of the testator’s actual words, supplying some others whose presence the words actually used by the testator assume, as we think, to be understood. Stated in this way, the clause in question would read as follows:
*463 “I devise to my sister, Henrietta Burgess, and her son, Dr. John E. Craig, as joint tenants, during their lives and the life of the survivor of them, the described lands ; and if Craig shall hereafter marry and die, leaving lawful issue of such marriage, or if not leaving such lawful issue, then leaving the lawful descendants of such children, and if such lawful issue, or if not such lawful issue, then if their lawful children, shall be in being at the time of the death of the survivor of the said Burgess and Craig, then I devise the premises in fee simple to such issue and children, according as the one or the other shall be the persons in being at the death of such survivor; but if Craig shall die without having been married, and without leaving either such lawful issue, or the children of such lawful issue, surviving him, then the premises to go to my right heirs.”
It will be observed that if Craig should die without having been married, he could not have lawful issue, and that the next words, “ and without leaving such lawful issue,” are of no effect as they stand. It is imperative that we should give effect to this clause of the contingency if we can do so, and we conceive that for this reason the word and must be taken to mean or. So that the whole clause relating to default of the intended devisees-must read as if expressed as follows: but if Craig shall die without having been married, or if, having been married, he shall die without leaving either such lawful issue or the children of such lawful issue, surviving him, then the said lands to go to my right heirs.
Was this a devise to Dr. Craig for life, with contingent remainder to his children, or was it, under the operation of the rule in Shelley’s case, a devise to him of an estate-tail ? Of course it could not be claimed, and has not been, that it operates as a devise to him in fee simple, inasmuch as the words used, if to be treated as words of inheritance at all, restrict the line of inheritance to heirs of the body. The question then is, in what sense the words issue, children and descendants were used in this will ?
A vast number of decisions have discussed the effect of *464 these words, but .the very able judgment of Alderson, B., in the case of Lees v. Mosley, 1 Y. & Coll. Ex. Ca., 589, contains a very complete summary of the law touching the application of the rule to devises to issue, and is of itself a sufficient reference. After referring to numerous authorities, he observed that in all of them the words issue “ is treated as a word capable of being used in different senses, either as including all descendants, in which case it is, of course, a word of limitation, was confined to immediate descendants, or some particular class of descendants living at a given time. Probably it will he found most frequently used in the former sense, and it therefore most frequently has the effect of giving an estate-tail to the ancestor. It might even perhaps be conceded that this is pñma facie its meaning. But the authorities clearly show that whatever be the jnma facie meaning of the word “issue," it will yield fr> the intention of the testator, to be collected from the will, and that it requires a less demonstrative context to show such intention than the technical expression “ heirs of the ” body would do. In short, it is well settled that, although the intention of the testator as to whether the rule shall apply, is immaterial, when the meaning of his phrases is once ascertained, his intention as to the sense in which he uses words is controlling.
It is claimed, however, on the part of the defendant, that 'in this case the context only shows that the word “issue" was actually used in its prima facie sense. The argument is that it is used as a term convertible with “ descendants,” and that the latter is a word which describes an entire line. We think that, on the contrary, the context shows that all of these designations must be understood as referring to particular persons, to be ascertained by the event, and that the conception of a line of descent and inheritors is excluded. As we have already indicated in recasting the language of this clause, it is apparent that the testator describes two sets of persons, to one or the other of which the lands should go, according as the one or the other should fill the condition on which they should take. He *465 provides that if the issue of Dr. Craig should be living at the time of the death of the surviving joint tenant for life, then the devise was to such issue so in being ; and next, that if no such issue should be then in being, but their descendants or children should be then in being, then the devise was to the latter. Such an alternative is applicable only to particular persons, and, as issue, children and descendants are words of variable meaning, and may mean only particular persons, we hold that, by issue of the marriage of Dr. Craig, we are to understand immediate issue or children, and that, by the descendants or children of such issue — for in this place these terms are used indifferently— the testator equally means to designate particular persons, and not a line of inheritors. It is to be observed that the issue and descendants of whom the testator is speaking, came precisely within the test by which Baron Alderson distinguishes individuals from all descendants or a line of descendants, and thereby determines whether they are to take by purchase, or are only terms of limitation to the ancestor. They must, that is to say, be issue or descendants in being “ at a given time.” By whatever words described, they are designated as persons answering to certain conditions, to the possible and intended exclusion of such issue, children and descendants as should not so answer. This, alone, is sufficient to show that these words were not used in a sense which would raise upon them, by construction under the rule in Shelley’s case, an estate-tail in the first taker. But there is a more conclusive reason why they cannot be understood to have been used in that sense ; the devise to the person described as issue is expressly of a fee simple.
At common law an estate-tail in the ancestor must descend as such to the issue; therefore an express devise to the latter of a fee simple amounts to an explanation, which is conclusive, that the devisor has not used the word “ issue ” in that sense which would make it a term of limitation to the ancestor, whereby they would inherit a smaller estate than the one which he has given them. Since the word “issue” is of variable meaning, and we are to accept that *466 meaning which the testator chooses, an express devise of a fee simple forbids us to adopt a meaning which would give the issue an estate with which the actual devise to them is inconsistent. This is clear on principle, and is established by authority. In Loddington vs. Kime, 1 Salk., 224 ; Id. Raymond, 203, where A devised land to B for life, and in case he should have any issue male, then to such issue male and his heirs forever. Upon a question whether this subsequent limitation to the issue male of B made B tenant in tail or not, it was held that it did not, but was a contingent remainder to his issue male. In commenting on this ca.se, Mr. Fearne (p. 152) says: “Now, this was not only a limitation to the issue mail instead of heirs, etc., but that limitation was even accompanied by superadded words of limitation in fee grafted on the words issue male ; which circumstances carry the case quite out of the rule I am speaking of.”
Mr. Tudor, in his notes to Leading Cases on Real Property, p. 499, expresses the opinion that Loddington v. Kime may be considered as overruled by Lord Keeper Henley’s decision in King v. Burchall, 1 Eden, 424. But that does not seem to have been his lordship’s own opinion, for he sought to distinguish Loddington v. Kime; and Mr. Fearne (p. 163) has shown that King v. Burchall was not only to the effect that the will did not intend to give a fee simple to the issue. Of course it would follow in that case that there was no devise inconsistent with an estate tail in the ancestor. Undoubtedly there is a considerable line of English cases in which it was held that the word “ heirs,” superadded to the words “heirs of the body” or “issue,” did not prevent the latter from being construed as words limiting an estate tail; but we think that these cases decided no more than this: that these superadded words, although sufficient, if taken alone, to give a fee simple to the issue, meant, in connection with the context, heirs of like kind with the heirs already mentioned, namely, heirs of the body. Of course it would follow in that case that there was no devise to the issue of an estate inconsistent with an *467 estate tail in the ancestor. But no such construction can be adopted when the testator expressly declares that the devise to the “issue” is of a “fee simple.” Properly, the only question open to consideration in cases of superadded words, is, whether the limitation to issue is actually of a fee simple, or is to heirs of a like kind with the “issue” or “ heirs of the body” already mentioned in the will. When the superadded words are used in the latter sense they are merely superfluous. And this seems to be all that is settled by the cases referred to.
But whatever may be said of these cases, this question has, for us, been authoritatively decided in Daniel v. Whartenby, 17 Wall,, 639, where the superadded words were “ heirs and assigns forever.” The principle there recognized is, that where it is clear that a fee simple is devised to the issue, that word will not be understood to have been used in a sense which would give an estate tail to the ancestor.
It was suggested at the argument that, by the operation of the statute of Maryland of 1786, ch. 45, an estate tail must descend as a fee simple, and that therefore a devise that the issue shall take in fee simple is not an alteration of the estate, which would be raised in the ancestor by the rule in Shelley’s case. But it must be remembered that we are dealing with a rule of the common law, which is applicable therefore as at common law; and this is a proposition that we should apply the rule where it would not be applicable at common law. Clearly it was not the purpose of this statute to extend its application. It merely determines what shall become of an estate tail when such an estate is created, and has no effect to determine when it is created.
We hold, then, that this was a devise of a life estate with contingent remainder to Dr. Craig’s children.
This conclusion brings us to the defendant’s alternative proposition, namely, that pending the contingency the fee in reversion descended to Mrs. Burgess and Mrs. Burche, that one moiety thereof descended from Mrs. Burgess to *468 Dr. Craig, that the other moiety was conveyed to him by Mrs. Burche, and that thereby his life estate was merged and the contingent remainder was defeated. The plaintiffs, on the other hand, claim that the whole of the reversion was devised to Mrs. Burche, by the residuary clause of the will, and that her deed to Dr. Craig did not take effect until after the remainder had vested .in the eldest of the plaintiffs, subject to let in the later born children; and secondly, that, if the reversion was not devised to Mrs. Burche, but descended to Mrs. Burgess and herself as the right heirs, then, as before, Mrs. Burche's deed was too late to affect the remainderman as to her moiety, while Mrs. Burgess’ moiety is not shown to have descended to Dr. Craig, and even if it did so descend, could not operate in his hands to defeat the contingent remainder by reason of a certain disabling clause of the will. We shall first consider whether the reversion was devised to Mrs. Burche by the residuary clause.
It appears that, after making certain specific devises and ' bequests, the testator provided as follows: “I hereby charge the rest, residue and remainder of my estate, not herein-before specifically devised or hereafter otherwise disposed of, with the payment of my past debts, so that the previous bequests of freedom to Henry Cook and Minna Cook, of my servants, Charles to Susanah, and Jane to Olivia Harrison, and the property hereinbefore devised to my sister, Henrietta Burgess, and Dr. John E. Craig, . . . shall not in any manner be liable therefor or charged therewith until the whole of the rest, residue and remainder of my estate personal and mixed, shall have been fully exhausted.” The residue thus charged was what he then proceeded to give to Mrs. Burche by the following clause: “The rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath, subject to the charges herein-before contained, and not otherwise, to my sister, Mrs. Susanah Burche, her heirs, assigns,” &c. Now “the property” devised to Mrs. Burgess and to Dr. Craig, by the clause under consideration, was the corpus, of which the reversion was the estate; and we must understand that *469 where the corpus was not included in the specific charge the estate in reversion was also not included; for, as to a charge of debts, they are the same thing; that is to say, a charge cannot be enforced by sale without carrying away both. Then, if the reversion was not included, in the residue charged, it could not fall within the residue devised by the residuary clause, which included only the property charged.
But there is a further, and even more conclusive reason why the residuary clause cannot be construed in this case, to include the reversion. The first clause of the will had provided that, if the remainder after Dr. Craig’s life estate should never take effect, the lands should go to the testator’s right heirs, who were Mrs. Burgess and Mrs. Burche; and this included the estate in reversion. That the heirs would, notwithstanding this devise, take by the better title of inheritance (4 Kent, 506-7) is immaterial; we are dealing with a question of intention, and this attempt to devise the reversion explains the intention and scope of the residuary clause. Mrs. Burche, then, did not take the reversion by this clause, but did take one moiety thereof by descent.
The next question is, whether this moiety passed to Dr. Craig, while the remainder to his children was yet contingent.
Her deed to him was executed on the 21st of October, 1848, but was not recorded until June 21st, 1850. It was suggested by the plaintiffs that, for default of recording witbiu six months after execution and delivery, it was rendered void by the statute of Maryland of 1766, ch. 14, sec. 2; but the effect of recording was governed by the Act of Congress of April 20th, 1838, 5th Stat., 226, which provided that deeds should be operative, as to subsequent purchaser, from the time of recording. Devises come within its operation. Then it is claimed that it was still recorded too late to affect the remainder, because it appears that, according to the course of nature, the oldest of the plaintiffs must then have been en ventra sa mere; in other words in being ; and that the remainder had, therefore, vested in *470 him, subject to let in the after born children, the other plaintiffs. But the coming into being was not the contingency on which the remainder was to vest. It was limited to such issue as should be in being at the time of the death of the surviving life tenant; so that the contingency continued down to the death of Dr. Craig in 1874. This deed, then, was recorded in time to operate against the contingent remaindermen with whatever effect the law might give to such a conveyance.
Next, as to Mrs. Burgess7 moiety. It is objected, on the part of the plaintiffs, that both she and Dr. Craig were cut off from claiming anything in this estate, even in reversion, by the operation of the following- clause of the will: “The foregoing bequests and devises to the said Henrietta Burgess and John B. Craig are to be in full of and in lieu of all claims they or either of them have or may have in any manner or form, whether as heirs at law or otherwise, upon my estate or any part thereof, and to be carried into effect only upon the condition of their and each of them releasing all claims and demands as aforesaid.77
It is clear that, pending the contingent remainder, there must be a reversion and that it must go to some person, either by descent or by devise as a remainder; and we find that one of the “foregoing devises77 to Mrs. Burgess was, that this very reversion should go to the testator’s right heirs, of whom she was one. As a question of mere intention, then, the testator did not mean, by the disabling clause referred to, to prevent Mrs. Burgess from taking a moiety of the reversion. Nor do we perceive how he could do so, if be had intended otherwise, except by devising such reversion to some other person. The law would govern the matter and give her the inheritance, notwithstanding any mere negative provision that she should not take as heir. And in the same way the law governs the effect of descent. If it takes place at all, such an estate has the .capacities always belonging to a reversion, and these were not, either as a matter of intention or of law diminished when Mrs. Burgess took this reversion.
*471 Next, as to the descent of hei- moiety to Dr. Craig. The plaintiffs object that it does not appear that she died intestate, or that he was her sole heir ; and the defendant claims that intestacy must be presumed in favor of heirs. When a plaintiff in ejectment claims as lineal heir, he has only to prove that the ancestor from whom he derives title was the person last seized, and that he is the heir of such ancestor, 2 G-reenl. Ev., sec. 309 ; Adams on Eject., 253, by Tilling-hast, leaving the defendant to prove title out of him by devise to a stanger, 2 Greenl., sec. 331. In Brandt, ex dem., vs. Cuyler, 10 Johns. R., 358, which was an action of ejectment by heirs at law, it appeared that the- lessors had said that their ancestor had made a will; but it was held that they were not bound to produce the will, or to show what devises it contained, and that it was for the defendant to show affirmatively, a devise of the premises, if he meant to bar the title of the heirs at law. Here it seems even to have been presumed that a will was in favor of the heirs’ title. Wé do not perceive how the position of an heir, on the record, should affect the rule as to proof of his title, and therefore hold that it appears that, to some extent at least, Mrs. Burgess’ moiety descended to Dr. Craig. The further objection, that he is not shown to have been her sole heir, is well taken. No such proof is set out in any of the bills of exception. The fact, however, that he took by descent any part of Mrs. Burgess’ moiety of the reversion requires us to consider the application of the doctrine of merger, as well when the life tenant acquires the reversion by descent as when he acquires it by conveyance. To these questions we now proceed.
The old puzzle as to the whereabouts of the fee when a contingent remainder was created by a common law conveyance, made no trouble when such a limitation occurred in a deed operating under the statute of uses or in a devise. In such cases it was settled that the fee was still in the bargainor or devisor, and descended to heirs, until the contingency happened, when it vested in the remaindermen unless it was prevented from doing so by a premature deter- *472 ruination of the life estate. This might occur by a forfeiture of the life estate, or by its surrender to the reversioner, or by its merger in the reversion. The problem presented by surrender is very simple ; the giving back of an estate of course ends it; but the problem of merger requires some analysis. It is sometimes said to be a surrender in law, but that is a figure and not an explanation. The conception was, that when the reverson came into the hands of the life tenant, and there was no intervening estate'to keep them apart, the reverson, which before had been only an incorporeal hereditament, was now, by coming to one in possession, itself an estate in possession; and, inasmuch as this possession as of a fee, included the whole time and quantity of the life estate, and was, in legal couception, possession of everything of which estate was capable, the life estate simply had no function nor any part to play. It could only he regarded, therefore, as having no actuality, and accordingly was held to be quite gone ; or, in the language of the old lawyers, who were fond of figurative expressions, it was drowned out.
But this conception supposed perfect and complete possession, while the life tenant may have either perfect or imperfect possession of the reversion; and whether he has the one or the other de}3ends upon the manner and circumstances in which it comes to him. If it is acquired by descent there is a distinction between cases of immediate and mediate descent from the testator, as to the operation of the reversion to merge the particular estate and defeat the contingent remainder. Mr. Fearne (Cont. Rem., 341), remarking that the decisions on this point were apparently conflicting, has classified them and drawn from them the following generalization : “ These seeming differences of opinion, I apprehend, may he reconciled by a distinction between those cases where the descent of the inheritance is immediate from the person by whose will the particular estate and the contingent remainder were limited, and the cases where these estates were not created by the will of the ancestor from the inheritance immediately descends on the particular estate.” *473 In the first class he includes Archer’s Case, I Rep., 66; Plunkett vs. Holmes, 1 Lev., 11 Raymond, 28, and Boothby Us. Vernon, 9 Mod., 127; and in the second, Kent us. Harpool, 1 Vent., 306, T. Jones, 76, and Hooker vs. Hooker, Cases temp. Hardwicke, 13.
If Mrs. Burgess had been the survivor, both the life estate and reversion would have been derived immediately from the testator, and, according to this distinction, the former would not, in her hands, be merged; but Dr. Craig, as survivor, derived the life estate from the testator, and afterwards, by a second step in the descent, derived the reversion from Mrs. Burgess, and, according to the same distinction, the remainder could, in his hands, merge the particular estate and defeat the contingent remainder. The reasons for these conclusions need further explanation. In cases of immediate descent, as Mr. Eearne points out (p. 343), the life estate and the reversion pass from the testator to the life tenant at the same instant of time, the one by his act, the other by his assent. Now if merger should take place at all, it must operate at that same instant, and the consequence would be that the life estate would never begin. Thus the will would be void ab initio, and it would be out of the power óf a testator to devise a life estate to his heir unless he should add a further vested limitation. It is therefore held that the inheritance descends to such heir only until the contingency happens, and that his possession is imperfect and does not merge the particular estate. And it is to be observed that this is not by judicial legislation, reaching after a reasonable result; it is required by the statute of wills. The legislature itself, by that act, abolished so much of the common law as stood in the way of a disposition of lands by will, and of course excluded,pari ratione, any application of the still remaining common law rule of merger which would have the éffect of nullifying the devising power by making a will inoperative ab initio. The result is necessarily the very doctrine which has been settled in the cases of immediate descent. The reversion descends *474 to the life tenant as heir, but shall not unite with his life estate so as to make the will no will.
But this is an exception to the ordinary and essential principle that the two estates shall constitute but one when one of them adds nothing to the other (4 Kent, 253-4), and as this exception is required only in order that a will may be a will, there is no reason, as Mr. Fearne points out, why it should be applied to a descent which happens after the will has been made effective, and when the estates differ in no respect from such estates vesting in the same person in any other way; or, to use Mr. Fearne’s words, “when the particular estate has once taken effect, there is no more reason why it (the life estate) should be exempt from those accidental modes of destruction to which the law subjects estates of the same nature in general, than there is in any other cases where the particular estate is merged and the contingent remainder is destroyed by the accession of the inheritance.”
Sergeant Williams, in a note to Purefoy vs. Rogers, 2 Sauud., 382, pretty plainly disapproves of Fearne’s solution of the cases from which he draws this distinction, but it is recognized by later writers and by the courts. Mayhew on Merger, 69; Preston on Merger, 492; 4 Kent, 253; Washburne on Real Property, vol. 1, p. 155, and in Crump vs. Norwood, 7 Taunt., 362, it was taken for granted.
If, however, there had been any doubt about the effect of this mediate descent to Dr. Craig, his own subsequent conveyance of all his estate to Loughlin clearly united the life estate and reversion in the hands of the latter so as to work a merger of the life estate; that is to say, to the extent of the coincidence of that estate and such part of Mrs Burgess’ moiety of the reversion as Dr. Craig inherited. In Egerton vs. Massey, 3 C. B. N. S., 338, there was a devise of life estate to one who was heir, with contingent remainders, and, on failure of these to take effect, remainder to life tenant, the latter conveyed by lease and release; and it was held that the two estates were united in the releasee, and the particular estate was merged, so that the contingent re *475 mainder was defeated. And in this country the same principle was applied in the comparatively late case (1835) of Bennett vs. Morris, 5 Rawle, 8. There the devise was construed to be of a life estate to one who was heir, with contingent remainder for life. Pending the contingency, the life tenant conveyed in fee simple by bargain and sale, and it was held that the life estate and the reversion were thus united so as to make one entire estate in the hands of the vendee, incapable of being separated to let in the contingent remainder.
As it was urged at the argument that the doctrine of merger is not favored and will not be enforced when, by its application, the evident intention of the testator will be defeated, it is proper to remark that it was not originally founded, in cases of devise, upon the particular intention of the testator, and that it has been applied in many cases, as Mayheiv observes, in plain disregard of such intention. Even the exceptional rule in cases of immediate descent of the reversion has no reference to any ultimate intention of the testator that the contingent remainder shall not be defeated. It only saves the will from being made no will; after that it leaves the estates which it provides to the common accidents of all estates, whatever may have been the expectation of the testator. On this subject Judge Kennedy said, in the case last referred to: “I do not considerita sufficient objection that the intention of the testator, as regards the contingent remainder, may be thus indirectly frustrated, because it must be presumed that he was acquainted with the law on this subject, as he was bound to know it; and that, unless he introduced trustees into his will for the jiurpose of preserving the contingent remainder, he left it in the power of the devisee of the particular estate to defeat the contingent remainder by destroying the particular estate.” 5 Rawle, 14,15. If the particular intention of the testator were the test of the applicability of this rule,we would hardly find a solution of the difficulty in a presumption that he knew the law of merger or forfeiture, or that there was such a thing as reversion. It can only be *476 said tliat merger is a role of real property which he cannot control when it applies, though he can meet it by making further limitations which prevent its application. Its existence as a part of the law of real estate in this country has been recognized even in the cases where it was held not to be applicable. Crisfield vs. Storr, 36 Md., 141. Clearly we we have no authority to reject it or to modify it; and the very fact, to which our attention has been called, that, in England and in some of our States, contingent remainders have been protected against this doctrine by statute, only suggests that the proper remedy is in the hands of the legislature, not of the courts.
We have only discussed this question in reference to that part of the reversion which descends from Mrs. Burgess. As to Mrs. Burche’s moiety, it is clear that her deed of grant, bargain and sale was effectual to pass her interest to Dr. Craig, aud the authorities to which we have already referred show that it had the effect to unite in his' hands the life estate and her moiety of the reversion in such manner as to make an entire estate in fee, incapable of being separated to let in the contingent remainder, and that consequently the latter was to that extent destroyed. Then again Dr. Craig’s deed to Loughlin, to which we have referred, included this interest also, and this alone would have been sufficient to unite Mrs. Burche’s moiety and the life estate as one entire fee in the bands of the vendee.
It was objected by the plaintiffs that Mrs. Burehe’s deed was ineffectual to bar the remainder, because it was only a bargain aud sale and not a feoffment; and on this point we were referred to Dennett vs. Dennett, 40 N. H., 198. The same objection, we presume, was intended to apply to Dr. Craig’s deed to Loughlin. But that rule is wholly inapplicable to sucb a transaction. When a life tenant, having only his particular estate, conveys in fee simple, the question is, whether he has forfeited his life estate and thereby destroyed the dependent remainder; and such forfeiture takes place only when be makes a tortious conveyance which disseizes the reversion. Of coarse conveyances under *477 the statute of uses have no such effect, and for that reason do not forfeit the life estate nor destroy the contingent remainder. It does not follow that they are ineffectual to work merger, for forfeiture and merger are very different things. In order to work the latter, it is enough that the two estates should come together; and there is no question of the sufficiency of a deed of bargain and sale to convey the reversion to the tenant, or to convey both the life estate and the reversion to a vendee. The passage in Fearne (Cont. Rem., p. 322) which is referred to as authority requiring a feoffment, has no reference to the cases just stated. He is there speaking of a conveyance of the life estate alone, and such a conveyance can affect the remainder only on the principle of forfeiture of the life estate. In a note to that passage, Mr. Butler has pointed out the distinction between this and a conveyance of the particular estate and the reversion together. See also Purefoy v. Rogers, 2 Saund., 386.
Our conclusion then is, that, to the extent of the coincidence of Dr. Craig's life estate with the reversion inherited and purchased by him, the former was merged and the contingent remainder was defeated; for it is well settled that merger may operate pro tanto. 1 Just., 182, b.; Wiscott’s Case, 2 Rep., 61, a.; Mayhew on Merger, 70, 71; Crump v. Norwood, 7 Taunt., 362 (370).
Instructions to this effect were asked and refused at the trial, and the jury were substantially instructed that the plaintiffs were entitled to recover the whole of the premises. We are of opinion that this was error. Judgment is therefore reversed, and the cause is remanded for a new trial.