(Case of Maccungie township.)

———

[Philadelphia, March 30, 1832.]

## Case of MACCUNGIE TOWNSHIP.

### IN ERROR.

It is no objection to the proceedings of the Court of Quarter Sessions upon a petition praying for the division of a township, that the petition asks for a division according to a line pointed out in the petition absolutely, and does not ask for any inquiry into the propriety of a division; or

That the order of the court authorizes the commissioners appointed by them to inquire into the propriety of making the division according to the prayer of the petitioners, without authorizing them to inquire in any wise, into the propriety of any other division line than that proposed; or

That the commissioners have divided the township according to the division line proposed by the petitioners and have not reported any enquiry or decision as to any other division.

On a *certiorari* to the court of Quarter Sessions of *Lehigh* county, the record of that court in the matter of the application for the division of *Maccungie* township, was returned to this court, where the exceptions filed by the appellants to the proceedings of the court below were argued by

*Brooke* for the appellants, and *J. M. Porter* for the appellees.

Opinions, agreeing with each other, were delivered by Ross, J., and Kennedy, J., in which the circumstances of the case are so fully and minutely stated, that any other report of it would be superfluous.

Ross, J.—By the record returned, it appeared that petitions were presented on the 8th day of *May*, 1828, to the court, signed by two hundred and sixty resident citizens of *Maccungie* township in said county, setting forth, amongst other things, that the township of *Maccungie* has long since been erected, and from its extent is inconveniently large for all township purposes: That there are upwards of seven hundred voters in said township, and according to the mode of conducting elections under the present election laws, it is exceedingly inconvenient, if not impossible, for all the voters in said township, to

(Case of Maccungie township.)

vote at a general election, &c.   The petitioners therefore prayed the court to divide the said township according to the following division line, to wit: Beginning at a stone in the line dividing the said township of *Maccungie* from the township of *South Whitehall*, on or near the line of land, late of *Jacob Shantz*, deceased, and thence extending in a straight line south fifty five degrees and a half west, through meadow land of *Jacob Shantz*, twenty nine perches, through cleared land of *General Henry Metz*, seventeen perches, to the public road leading from *Bortz's* tavern to *Shantz's* mill; thence across said road and through land of *John Bortz*, one hundred and thirty five perches, through land of *Nicholas Litzenberger*, eighty four perches, through land of *Michael Bartion*, one hundred and eight perches, through land of *Charles Lick*, deceased, eighteen perches, through woodland of *John Hiskey*, twelve perches, through land of *Michael Hiskey*, deceased, one hundred and fifty perches, to the road leading from *Allentown* and *Reading* road, to *Fogelsville*, thence across said land, and land of *Michael Bartion*, one hundred and seventy perches, through land of *George Hiskey*, sixty one perches, through land of *David Schall*, fifteen perches, to the mail road leading from *Allentown* to *Reading*, thence across said road, and through land of *David Schall*, fifty-three perches, to the road leading from *Trexlertown* to *Eman's*, thence across said road, and through land of *Philip Hoffner*, sixty-one perches, through land of *Benjamin Haines*, one hundred and ninety-two perches, through land of *John Albrecht*, thirty-eight perches, to the road leading from *Millerstown* to *Fogelsville*, thence across said road and through land of the said *John Albrecht*, thirty-six perches, thence through land of *Henry Mohr*, twenty perches to the creek, continuing through said *Mohr's land*, twenty-eight perches, thence through land of *James Smoyer*, one hundred and fifty-six perches, through woodland of *Jonathan Breinig*, fifty-two perches, through land of *Henry Romich*, twenty-four perches, to the road leading from *Millerstown* to *Breinig's* tavern, thence across said road and through land of the said *Henry Romich*, one hundred and sixty-eight perches, through land of *George Wolvert*, deceased, sixty perches, through land of *Peter Butz*, one hundred perches, through land of *John Butz*, sixty-six perches, through land of *Jonathan Butz*, forty-two perches, through land of *Peter Fegely*, eighty two perches, and through land of *Christian Fegely*, twenty seven perches, to a post in the line dividing the said township of *Maccungie*, and the county of *Lehigh*, from the county of *Berks*, the whole length of which division line, being two thousand and four perches.

On the presentation of this petition, the court made the following order: " *May* 8th, 1828. The petition being read the court appoint *Jacob Dillinger, Soloman Keck*, and *Jacob Hartzell*, to inquire into the propriety of granting the prayer of the said petition, and if they shall deem it proper and necessary, to divide the said township of *Maccungie*, then it shall be the duty of the said *Jacob Dillinger, Soloman Keck*, and *Jacob Hartzell*, or any two of them, to make a plot or draft

(Case of Maccungie township.)

of the township proposed to·be divided, and the division line propos-
ed to be made therein, if the same cannot fully be designated by nat-
ural lines or boundaries, all which they, or any two of them, shall
report to the next court of Quarter sessions, &c. together with their
opinion of the same."

*September* the 2nd, 1828, the three men appointed by the court
made report, together with their opinion, " that it is proper and ne-
cessary to divide the said township according to said division line."
The report was read and filed, *September* 2nd, 1828, and on the same
day remonstrances against the proposed division, signed by two hund-
red and sixty three persons, were presented against it. On the 18th
day of *December*, the following exceptions to the proceedings, were
filed.

*First.* The petition does not set forth any sufficient cause for a
division.

*Second.* The petition asks for a division according to a line pointed
out in the petition absolutely, and does not ask for any inquiry into
the propriety of a division.

*Third.* The order authorises the commissioners only to inquire into
the propriety of making the division according to the prayer of the
petitioners, and does not authorise them to inquire into the propriety
of any other division line than that proposed.

*Fourth.* That the commissioners did not run any other lines of the
township than the division one, and of course could not know the dis-
tances on the other lines of the township which they lay down on the
draft.

*Fifth.* That a majority of the inhabitants of the township are
opposed to the division, and there is no occasion for the division thereof.

*Sixth.* That the line proposed does not divide the parallelogram
composing the present township at right angles in equal parts, nor
does it in any great degree lessen the distance which most of the inhab-
itants will have to travel to township elections and meetings.

*Seventh.* That the commissioners have divided the township ac-
cording to the division line proposed by the petitioners, and have not
reported any inquiries or decision as to any other division.

*Eighth.* That the draft reported is erroneous, and calculated from
its appearance on paper, to give a different view of the township
from what it would really exhibit if carefully protracted.

*Ninth.* That due notice was not given to the inhabitants of the
township of *Maccungie* who were opposed to the division, to enable
them to attend and contest the division before the commissioners.

On the 4th of *December*, 1828, the report and proceedings were
recommitted to the same men, the persons remonstrating against the
division objecting thereto.

On the 2nd day of *February*, 1829, the commissioners made the
following report:

(Case of Maccungie township.)

" To the Judges of the Court of Quarter Sessions of the Peace for the County of *Lehigh.*

" The commissioners appointed by the court at *May* sessions, to inquire into the propriety of dividing *Maccungie* township, to whom was recommitted the report made by them and the proceedings had thereon, report, That due and public notice having been given by advertisements to the supervisors and others of the said township of *Maccungie*, posted up in all the most public places, they proceeded to examine the line dividing the said township of *Maccungie* from the township of *Weissenburg* and *Low Hill.* They commenced at a post, being a corner between the townships of *Maccungie, North Whitehall, South Whitehall,* and *Low Hill,* on land of *Jacob Hielman,* and ran south west six hundred and sixty perches to a stump marked for a corner of *Weissenburg* and *Low Hill* townships on land of *Jonathan Mohr,* continuing same course thirteen hundred and twenty perches to the *Berks* county line on land of *Samuel Heck,* the whole distance being nineteen hundred and eighty perches : That they have examined an official draft of the adjoining township of *Weissenburg,* which corresponds in course with the draft annexed to their former report. They are aware that on the state map the line between the said townships of *Maccungie* and *Weissenburg* does not appear a straight one, but that must be an error in the draft remaining among the late Mr. *Scull's* papers, from which a map of *Lehigh* county was made for the state map. The line of *Maccungie* township along *Berks* county is twenty-six hundred perches. In the draft annexed to our former report it is twenty-five hundred and sixty perches. Considering how long ago Mr. *Scull* measured that line, the difference is but small, and evidently the points and corners are the same. Now commence at the *Berks* county line, and run according to Mr. *Scull's* draft, you would leave the stump or *Weissenburg* or *Low Hill* corner two hundred perches to the left hand, and a district of country sixteen hundred and sixty perches in length and two hundred perches in breadth as belonging to no township, which we cannot believe to be the case. Having also examined drafts of all the other adjoining lands, and from other information and observations, we feel confident that the draft annexed to our former report is correct."

This report was read and held under advisement, and on the 6th day of *February,* 1829, the following exceptions were filed; and on the 4th of *May,* 1829, a rule was granted to shew cause why the proceedings should not be quashed :

*First.* That there was error in recommitting the proceedings to the commissioners.

*Second.* That when the report was recommitted, the commissioners should have proceeded to discharge all the duties enjoined on them by the original order, the recommitment being general, and no notice having been given to the supervisors of the highways of the township of the meeting of the commissioners under the former order.

*Third.* That the commissioners instead of inquiring and finding as by the act of assembly is enjoined upon them, have merely gone into an argument in support of their former erroneous idea as to what was the correct draft of *Maccungie* township.

*Fourth.* That the plot of the township of *Maccungie* reported by the commissioners with their report is incorrect, as appears by a copy of the draft made by *Edward Scull*, hereto annexed.

The following errors were assigned.

*First.* The court erred in quashing the proceedings.

*Second.* The court erred in considering that the petition was defective inasmuch as it prayed for a division according to a line pointed out by the petitioners.

*Third.* The court erred in considering the order as erroneous and improper, as directing the commissioners to inquire into the propriety of making the division according to the prayer of the petitioners, and in considering it as necessary that the commissioners should be authorized specially by the order to inquire into the propriety of other division lines.

*Fourth.* The court erred in considering it as necessary that the commissioners should have reported an inquiry and decision as to other division lines, than that reported by them as proper and necessary.

*Fifth.* The court erred in taking into consideration and deciding upon the exceptions to the original report. The persons opposing the division should have been confined to their exceptions filed to their second report, or report of recommitment.

*Sixth.* That inasmuch as the decision was necessary to have been made as the commissioners had reported it to be expedient, and as the proceedings are believed to be, in all respects, regular and correct, the court should have confirmed the division as reported.

The court of Quarter Sessions quashed the proceedings for the 2nd 3d, and 7th exceptions filed, without giving any opinion on the other exceptions. This is a concise view of the whole of the case. It is more full than those which have been reported, but not more so than seemed necessary to make the case intelligible, especially as it had been once already adjudicated on. On the argument much time was consumed in endeavouring to show a dissimilarity between the laws authorizing the court to appoint viewers to lay out roads, and the law authorizing them to divide townships. The dissimilarity in many respects is so clear that it would be a waste of time to point out the many provisions in the one, that are not found to the other.

It was contended that the words "if *necessary*," in the act authorizing the court to divide townships, give a discretionary power to the sessions to judge, in the first instance, whether or not a division is necessary, which power is not given by the road law; yet by that law the court are, on application for a view, as "often as they find it needful," required to "appoint six respectable freeholders." The

(Case of Maccungie township.)

right to refuse to appoint the view is as fairly to be inferred from these words, as to refuse to appoint men to divide a township. In practice, I believe, a petition for a view of a road is never rejected : at least I know of no decision to that effect.    It is conceded by the counsel for the exceptors, that the court have the power in the first instance to decide that the division of the township is expedient or inexpedient, a concession I am not prepared to sanction, unless the division can be designated by natural boundaries, or other landmarks appearing on the ground.    The court have a *discretion* to lay off townships or divide them, and if they had rejected the application, because in their opinion it was inexpedient, they might have done so. But the court decided the question on a mistaken view of the law, conceiving : 1st. They had no right to appoint men to make a division according to a line pointed out in the petition, absolutely, and does not ask for any inquiry into the propriety of the division. 2nd. That the order authorizes the commissioners to inquire into the propriety of making the division according to the prayer of the petitioners, and does not authorise them to inquire into the propriety of making any other division. 3d. That they have *not reported* any inquiries or decision as to any other division.

In the case of erecting a separate township out of *Wyalusing* township, one of the exceptions was, that it did not appear that the commissioners viewed the ground.    Chief Justice TILGHMAN, who delivered the opinion of the court, said, " there is only one objection of any weight in this case, and that is, that the commissioners did not return a draft of the whole township of *Wyalusing*.    There is nothing in the objection of its not appearing that the commissioners viewed the ground.    The act does not require that it should appear.    But when men return a draft and give their opinion that the division is convenient, we must presume that they had taken the proper means of judging, which could not be done without a view of the country." 2 *Serg. & Rawle*, 402.    In the case now under consideration, a draft of the whole township was returned, together with the opinion of the commissioners that it was proper and necessary to divide the said township.    When this case was before the court formerly, reported in 14 *Serg. & Rawle*, 67, the proceedings were reversed, because it did not appear that the commissioners had made any inquiry into the *expediency* of granting the prayer of the petition.    They were appointed to make a plot or draft, they did so.    The last case therefore only decided that it is necessary it should appear the men inquired into the expediency of granting the prayer of the petitition.    These two cases, and the opinions already expressed, are decisive of the questions made in this cause.    There is no weight in the third point, or seventh exception.    From the drafts returned, it is to be presumed the inquiries were made ; sufficient latitude was given by the order appointing the men, to wit, " that they, or any two of them, should make a plot or draft of the township proposed to be divided, and the division line proposed to be made therein, if the same cannot be fully

(Case of Maccungie township.)

designated by natural lines or boundaries," all which it appears has been done. I can see no objection to confining the division to the line designated by the petition. If the petitioners ask for a particular specified division, why should they have imposed on them a totally distinct and different division? Why if they ask for bread, should they be obliged to accept of a stone? Upon the whole view of the case the court fell into an error in supposing they had no right to make an order for a division according to a line pointed out in the petition. The proceedings must be reversed.

KENNEDY J.—A petition signed by two hundred and sixty of the inhabitants of *Maccungie* township, was presented in this case to the court of Quarter Sessions of *Lehigh* county, setting forth various inconveniences under which they laboured, on account of the great extent of the territory of the township, and therefore prayed a division of it, according to a line therein designated ; upon which the court appointed three impartial men, to inquire into the propriety of granting the prayer of the petitioners. These men afterwards made a report in favour of the division of the township *according to the line proposed in the petition* as being *necessary to suit the convenience* of the inhabitants of the township. This line they described by certain monuments, courses and distances. Nine exceptions were taken and filed against this report ; and the court on the sixth of *May*, 1829, quashed the proceedings for the second, third and seventh exceptions, which are as follows, viz.

*Second.* " The petition asks for a division according to a line pointed out in the petition absolutely, and does not ask for any inquiry into the propriety of a division.

*Third.* " The order authorises the commissioners only to inquire into the propriety of making the division according to the prayer of the petitioners, and does not authorise them to inquire in anywise into the propriety of any other division line than that proposed."

*Seventh.* " That the commissioners have divided the township according to the division line proposed by the petitioners, and have not reported any inquiry or decision as to any other division."

This proceeding is founded upon an act of assembly, passed the 24th of *March*, 1803, 4 *Smith's L.* 30-1. *Purd. Dig.* 433, which directs, " that the several courts of Quarter Sessions of the peace, of the commonwealth of *Pennsylvania* in their respective counties, shall, from and after the passing of the act, have authority, upon application by petition to them made, to erect new townships, to *divide any township already erected*, or to alter the lines of any two or more adjoining townships, *so as to suit the convenience of the inhabitants thereof*, and the said several courts in their respective counties upon application, so as aforesaid made to them, are thereby authorised and required to appoint three impartial men, if *necessary*, to inquire into the propriety of granting the prayer of the petition, and it shall be the duty of the said men so appointed, or any two of them, to make a plot or draft of

the township proposed to be divided, and *the division line proposed to be made therein*, or of the township proposed to be laid off, or of the lines proposed to be altered of any two or more adjoining townships, as the case may be, if the same cannot be fully designated by natural boundaries, all which they, or any two of them, shall report to the next court of Quarter Sessions, together *with their opinion of the same*, and at the court after that to which the report shall be made, the court shall confirm or set aside the same, as to them shall appear just and reasonable."

The first exception for which the proceedings were quashed, by the court of Quarter Sessions, is to the form of the petition, because it does not ask for an *inquiry into the propriety* of the division prayed for. This exception does not appear to be well founded, for the petition not only solicits a division of the township, but sets forth the reasons for doing so, which of necessity demanded of the court an inquiry into the propriety of granting the prayer contained in the petition. The mode or means by which the court shall make this inquiry, was not necessary to be inserted in the petition, because the act of assembly itself points out this, and from its terms would seem to leave it discretionary with the court, whether they shall appoint three impartial men or not, for the purpose of aiding in this particular. By the express words of the act, the court is only authorised and required upon application by petition for the division of a township to appoint three impartial men " if necessary," and of this necessity the court is to judge according to its discretion.

The second exception upon which the court founded their order to quash the proceedings, was to the previous order made by it, appointing the three men, and directing the inquiry which they were to make, which confined them to the propriety of dividing the township, according to the line of division, as set forth and prayed for in the petition, and did not authorise them to inquire into the propriety of dividing it by any other line.

It is agreed that the court had no power to restrict the commissioners appointed by them in their inquiries, to the line of division proposed in the petition ; and it has been likened to a petition for laying out a public highway and the appointment of viewers thereon, where it is alleged that although the *termini* of the road prayed for must be set out in the petition, yet if the route and intermediate points, be also designated, and the viewers appointed be restrained by the order of the court appointing them, to the route and courses set forth in the petition in laying out the road, if they should be of opinion that a public highway was necessary and wanting between the *termini* mentioned in the petition, the whole proceeding would be irregular and ought to be quashed. Admitting all this, as it regards the viewing and laying out of a public highway, to be correct, it will be difficult, I apprehend, to apply the reason of it to an application for the division of a township. In the first place, it may be observed, that public highways are only to be laid out and established

(Case of Maccungie township.)

for the convenience and benefit of the public at large; and if it be adjudged proper and necessary that a highway should be laid out between any two given points, the interest of the public demands, and can only be consulted by adopting, in laying out the road, the shortest and best practicable route between these points, of which the viewers are to judge. To permit the petitioners, who are at most but a small part of the public, and who have frequently some private interests to be promoted by laying out the road, to designate and direct in their petition the whole route of it, would be to defeat the public interests in many instances at least, which is the great object in laying out public roads. The only consideration that is permitted to interfere with this principle, is, the unnecessary and useless sacrifice of private property and improvements, which is to be avoided. All these considerations are to operate in settling and determining upon the route of the road, and makes it highly proper that the viewers and the court should be left at full liberty to exercise their judgments in regard to them.

In the next place it must be considered that by our act of assembly which prescribes the mode and gives the authority for laying out roads, that the courts of Quarter Sessions cannot dispense with the appointment of viewers. They must appoint them; and these viewers are to be appointed, as well for the purpose of determining upon the particular course of the road, as upon its necessity; and in deciding upon the ground or course where the road shall be laid out and established, they must be left at full liberty and discretion in doing so, to decide according to their judgment of what the public interest, having a proper regard for the private improvements and rights of individuals, would seem to require.

Now it is obvious that the public have little if any concern or interest in the division of a township. According to the very terms of the act of assembly already recited on this subject, it will be seen that it is only to be done for the *convenience of the inhabitants of the township,* and upon *their* application by petition. It is only then, in those cases where the inhabitants of a township think their convenience requires a division of the township, that the courts of Quarter Sessions are, authorised to act at all. This matter of convenience is a thing of which the inhabitants of the township are to judge in the first place, and no division of the township can be made in opposition to their wishes and judgment in this particular. The courts of Quarter Sessions would seem to have merely the power of inquiring in such cases into the reasonableness and propriety of the wishes of the applicants as expressed in their petition; and whether the division prayed for, was in conformity to the wishes of the inhabitants generally of the township or not; and if necessary, to appoint three impartial men, to aid in ascertaining all these matters; and finally, to grant or to reject the prayer of the petition. If then, the inhabitants of the township have the right, and must exercise it in the first place, of deciding whether their convenience requires a division of

(Case of Maccungie township.)

their township or not, as it must be admitted, I think, that they have, it follows that they have the right to decide where the line of division shall be, if a division be made at all; because whether their convenience shall in any degree be promoted by a division of the township, may depend, in their opinion, entirely, or at least mainly, upon where the line of division shall be fixed. They have a right then, as it appears to me, to *propose* in their petition to the court, a *line of division*, and indeed such are almost the very words of the act of assembly, and *to say to* the court that their convenience will be promoted by making a division of the township according to the line so proposed; but if it cannot, or be not made in conformity thereto, that they do not desire any division to be made. The third exception, therefore, taken in the court below, furnished no ground whatever for quashing the proceedings.

The insufficiency of the remaining reason for the court below's quashing the proceedings which is contained in the seventh exception there taken, has been fully established by what has been said upon the second ground; for if the order of the court below in appointing the commissioners was correct, as has been shown it was, the report of these commissioners, which forms the subject of this seventh exception, and which is in every respect a full and complete response to the order of the court under which they acted, must also be free from error. The order of the court of Quarter Sessions quashing the proceedings in this case is reversed, and the record thereof remanded with direction to the said court to proceed therein as is further required by law.

Proceedings of the court of Quarter Sessions reversed.