## East Pennsboro Township Boundary Line

*William F. Martson*, for Lower Allen Township.
*W. E. Shissler*, for East Pennsboro Township.
*Edwin M. Blumenthal*, for Camp Hill Borough.

SHUGHART, P. J., January 29, 1958.—On or about March 6, 1923, certain freeholders and taxpayers of a portion of East Pennsboro Township, Cumberland County, presented a petition to the quarter sessions court praying that a commission be appointed to inquire into the propriety of altering the boundary lines of Lower Allen Township in such a manner as to annex a part of East Pennsboro Township to the Township of Lower Allen.

Commissioners appointed by the court made their report to the court and on December 3, 1923, the court entered an order annexing a portion of East Pennsboro Township to Lower Allen Township.

The description of the area annexed as contained in the order of court varies from that which is contained in the petition for the appointment of commissioners and a dispute has arisen over the amount of territory annexed and consequently the location of the boundary line between Lower Allen and East Pennsboro Townships.

In order to resolve the dispute and fix the boundary line the Commissioners of East Pennsboro Township have presented their petition praying that the court clarify the order of December 3, 1923, by defining the area annexed to Lower Allen Township to be the same as that described in the petition for appointment of commissioners. After an answer to the petition was filed by Lower Allen Township, testimony was taken and the matter has been argued and is now before the court for disposition.

The petition for appointment of commissioners describes the area to be annexed to Lower Allen Township as follows: "Bounded on the north by the right of way of the Pennsylvania Railroad—formerly the Cumberland Valley Railroad; on the east by the Harrisburg—Gettysburg State Road; on the south by the

Harrisburg-Gettysburg State Road as far west as Eichelbergers Corner and by the Simpson Ferry Road west of Eichelbergers corner to the eastern boundary line of *Hempden* Township; and on the west by Hampden Township."

The order of annexation describes the area as being bounded "on the North by the southern boundary line of the Borough of Camp Hill" instead of the right-of-way of the Pennsylvania Railroad as in the petition; in all other respects the two descriptions are the same. For a considerable distance the southern boundary line of the Borough of Camp Hill runs along the right-of-way of the Pennsylvania Railroad, but at one point the Camp Hill line runs northwardly at approximately a right angle to the right-of-way for a distance of a half mile or more before once again going in a westwardly direction to form the southern boundary of the borough. Because of this if the area to be annexed is to be determined literally from the order of court, considerably more land was included in the annexation than called for in the petition for annexation.

Understandably, Lower Allen contends that the annexation must be determined by a literal interpretation of the order of court, while East Pennsboro Township contends that the order of court should be clarified by defining the area annexed to be as described in the petition for the appointment of commissioners.

The petition for annexation was presented in accordance with the provisions of The General Township Act of July 14, 1917, P. L. 840. Section 70 of this act confers authority upon the courts of quarter sessions to alter, ascertain and establish township boundaries. Section 71 provided that upon petition for the purpose of altering or ascertaining and establishing the lines or boundaries "the court shall appoint

three impartial men to inquire into the propriety of granting the prayer of the petition". The section further provides, inter alia, that the commissioners shall make a report to the court, together with their opinion respecting the change.

The earliest act of assembly dealing with the location or relocation of township lines is the Act of March 24, 1803: Laws of Pennsylvania 1802-03, page 439; Statutes at Large of Pennsylvania, vol. XVII (1802-05), page 334. This act provided that upon application by petition to the court of quarter sessions, inter alia, "to alter the lines of any two . . . townships so as to suit the convenience of the inhabitants thereof", the courts were authorized and required to appoint "three impartial men if necessary to enquire into the propriety of granting the prayer of the petition . . .".

In construing this statute it was held in the Case of Maccungie Township, 3 Rawle 459, that petitioners in a proceeding for the division of a township had a right to decide where the line of division shall be if it is to be divided at all and held that the line could not be fixed at any other place. The court said, at page 467:

"It is only then, in those cases where the inhabitants of a township think their convenience requires a division of the township, that the courts of Quarter Sessions are authorized to act at all. This matter of convenience is a thing of which the inhabitants of the township are to judge in the first place, and no division of the township can be made in opposition to their wishes and judgment in this particular. The courts of Quarter Sessions would seem to have *merely the power of inquiring in such cases into the reasonableness and propriety of the wishes of the applicants as expressed in their petition;* and whether the division prayed for was in conformity to the wishes of the in-

habitants generally of the township or not; and if necessary, to appoint three impartial men, to aid in ascertaining all these matters; and finally, to grant or to reject the prayer of the petition. If then, the inhabitants of the township have the right, and must exercise it in the first place, of deciding whether their convenience requires a division of their township or not, as it must be admitted, I think, that they have, it follows that they have the right to decide where the line of division shall be, if a division be made at all; because whether their convenience shall in any degree be promoted by a division of the township, may depend, in their opinion, entirely, or at least mainly, upon where the line of division shall be fixed. *They have a right then, as it appears to me, to propose in their petition to the court, a line of division, and indeed such are almost the very words of the act of assembly, and to say to the court that their convenience will be promoted by making a division of the township according to the line so proposed: but if it cannot, or be not made in conformity thereto, that they do not desire any division to be made.*" (Italics supplied.)

The Act of 1803 was followed by the Act of April 15, 1834, P. L. 537, secs. 13 and 14 of which likewise provided for the appointment of three impartial men "to inquire into the propriety of granting the prayer of the petition . . ." for altering or changing township lines.

The Supreme Court in the Case of Green Township, 9 W. & S. 22 (1845), held that the commissioners had no authority to recommend that the township be divided on a line other than the one the petition prayed for. The court said, at page 25:

"The commissioners appointed by the court upon the first petition at its August session of 1844, were

appointed for a special purpose; which was, to inquire into the propriety of granting the *prayer of the petitioners to have a division of the township made according to the line set forth in their application. Beyond this the commissioners were not authorized to go; nor indeed do I think that the court had the power upon that petition to give them any further authority.* They reported against the propriety of dividing the township according to the line mentioned in the petition, which, agreeably to the provisions of the Act of Assembly, was all they had to do, and put an end to all further proceedings upon that petition." (Italics supplied.)

In Wetmore Township, 68 Pa. 340 (1871), a petition was presented to the court praying for an alteration of the lines of Wetmore Township to include portions of two other townships. The commissioners reported the lines as prayed for, but the lower court, not being satisfied with them, altered the lines at its own instance and confirmed them as altered. On appeal it was held that the court had exceeded its authority under sections 13 and 14 of the Act of 1834, supra. The decree of confirmation was set aside leaving it up to the court below to confirm or set aside the report of the commissioners as the court deemed just.

The rule laid down in the Green Township case, supra, was again recognized and applied in the case of Stowe Township Division, 23 Pa. Superior Ct. 285, 289 (1903).

We have read the case In re: Division of Paradise Township, 4 Leg. Gaz. 382 (1872), which counsel for Lower Allen has cited for the proposition that commissioners "are not bound to adopt unhesitatingly the line prayed for, on the contrary . . . may report such line as they deem the best interests of the in-

habitants require." This decision by the Court of Common Pleas of York County might be disregarded as contrary to the decision of the appellate courts decided both before and after it was rendered. A reading of the case, however, discloses that the case is distinguishable from the instant case because the petition did not indicate a definite line but asked that the division line be made "by the most direct route". The court held that this language simply fixed "the points beginning and ending" without intending to confine the commissioners to a direct line, but rather to leave the exact course to the judgment of the commissioners.

No cases construing the language employed in the Act of 1917 have been cited to us nor has our own research revealed such cases. We are satisfied, however, that the language of the Acts of 1803, 1834 and 1917 is so similar respecting the procedure to be followed when a petition to alter boundaries is presented, in fact the duty resting upon the commissioners is identical in all three acts, "to inquire into the propriety of granting the prayer of the petition", that the decisions rendered under the Acts of 1803 and 1834 are fully applicable to the Act of 1917.

We conclude, therefore, that in light of the decisions cited, the commissioners appointed in this case were without power to do more than to recommend that the prayer of the petition be granted or refused.

It follows that we cannot construe the order of court as validly including more land in the area annexed than was called for in the petition for the appointment of commissioners. Certainly, if at all possible, after 35 years have elapsed, we should not without the strongest of reasons adopt a construction of the order of court that would convict the commissioners of misconduct by including more land in the

area annexed than petitioners asked: Green Township case, ante. Likewise, we may not assume that the court by the order of December 3, 1923, intended to exceed its authority by adopting a description different than that contained in the petition: Wetmore Township case, supra.

In Stowe Township case, supra, at page 288, the court said: ". . . it is not our duty to adopt a construction of the ambiguous language that would convict the commissioners of irregularity unless such construction is imperatively required." In this case we must assume that the commissioners and the court acted legally and if the description employed in the order is construed to include the identical area referred to in the description in the petition, they have done so. The language of the order will be thus construed, because to do otherwise would cast doubt on the legality of the order and on the whole proceeding. It is obvious that neither township desires to nullify the annexation of the area south of the railroad right-of-way.

Upon careful consideration we are satisfied that the commissioners did not intend to alter the area referred to in the petition by changing the description. It is clear that the southern boundary of the Borough of Camp Hill from 17th Street westward to what is now 32nd Street was in 1923 the right-of-way of the Pennsylvania Railroad. It is likewise evident that in the same area the right-of-way of the railroad constituted the northern boundary of East Pennsboro Township. By the use of the southern boundary line of Camp Hill instead of the railroad right-of-way as the northern boundary of the area annexed, the commissioners removed any doubt as to whether the annexation was to the southern edge, northern edge or the center of the railroad right-of-

way and further avoided any question that the right-of-way remained in East Pennsboro Township while the land on either side was in Camp Hill Borough and Lower Allen Township. From 32nd Street westward the northern boundary remained as the right-of-way of the railroad as described in the petition, because beyond the right-of-way northward lay other land of East Pennsboro Township.

While the commissioners could have better clarified the area described in the petition, we feel that the change as set forth in the words of the court in Stowe Township case, supra, at page 289, "produced no variance between the petition, properly understood, and the report. There was thereby included . . . no more and no less than was clearly intended to be included by the petitioners. We fully recognize the rule laid down in Green Township, 9 W. & S. 22, that upon a petition of the inhabitants to divide a township the court has not power to adopt any other line of division than that prayed for in the petition, but we are unable to sustain the appellant's contention that the rule was violated in the present case".

One clear indication that the commissioners intended the description they used to describe the same area as that in the petition is found in the language they used in their 12th finding of fact in which they said in part: "Your commissioners are of opinion that the boundary lines of the said Townships of East Pennsboro and Lower Allen should be altered *as set forth in the prayer of said petition.* . . ." (Italics supplied.) Certainly if they intended to annex more land to Lower Allen than was called for in the petition, they would have so stated at this point in their report.

Our decision in this case is dictated by the decisions referred to above. The circumstances present in this

case exemplify the propriety of those decisions. While the acts of assembly are all silent as to notice to be given by the commissioners appointed by the court, it has been authoritatively determined that the inhabitants have a natural right to a hearing before the commissioners and, therefore, it is the duty of the commissioners to give notice: In re Bethel Township, 1 Pa. 97; Norwegian Township, 20 Pa. 324; Independent School District No. 8, in Sewickley Township, 33 Pa. 297; Stowe Township, supra.

In this case, from the report, it appears that notice of the time and place of the commissioners' meeting was given to the supervisors and school directors of East Pennsboro and Lower Allen Townships, by the posting of 10 hand bills in the "most public places in the vicinity of said proposed change of boundary lines" and by advertisement. The copy of the advertisement admitted into evidence describes the area involved as it is described in the petition. We may assume that the same was true of the notices to the officials and those which were posted. The proceedings do not show that any notice of the filing of the report of the commissioners was given to the "inhabitants". The decisions do not so state but it is obvious that the requirement of notice is one of the most compelling reasons why the commissioners are precluded and prohibited from altering the line from that which is contained in the petition: Norwegian Township, supra.

In this case, people who were satisfied with the proposed change could remain away from the hearing because the commissioners were powerless to recommend some other change that would be displeasing to them. For example, the owners of the land Lower Allen now claims was included had no notice whatsoever that their land was about to be annexed to another township and would have had no opportunity

of being notified of any change. It is clear that the rule laid down by the cases is not only supported by the langauge of the statute but reason and justice as well.

We hold, therefore, that the description contained in the order of court of December 3, 1923, shall hereafter be construed to be the same as that contained in the petition.

And now, January 29, 1958, at 3 p.m., it be and is hereby ordered and decreed that the order of court dated December 3, 1923, and recorded in Cumberland County Road Docket 6, page 446, shall be considered as if the description contained therein coincided with that contained in the petition for appointment of commissioners, to wit: Bounded on the north by the right of way of the Pennsylvania Railroad—formerly the Cumberland Valley Railroad; on the east by the Harrisburg-Gettysburg State Road; on the south by the Harrisburg-Gettysburg State Road as far west as Eichelbergers Corner and by the Simpson Ferry Road west of Eichelbergers Corner to the eastern boundary line of Hampden Township, and on the west by Hampden Township.

Further, in the interest of future clarity, it is ordered and directed that where a portion of the said railroad right-of-way touches the southern boundary line of the Borough of Camp Hill, the said southern boundary line of the said borough shall be considered the said northern boundary of the area annexed to Lower Allen Township.

The clerk of courts is further directed to enter a copy of this order as a part of the docket entries in the proceedings found in Road Docket 6, page 446, et seq.

An exception is noted for Lower Allen Township.