United States Court of Appeals,

Fifth Circuit.

Nos. 93-2596, 93-2635.

NUTRO PRODUCTS CORPORATION, Plaintiff-Appellant,

v.

NCNB TEXAS NATIONAL BANK, and Federal Deposit Insurance Corporation as Receiver for First Republic Bank, Houston, N.A., Defendants-Appellees.

Oct. 17, 1994.

Appeals from the United States District Court for the Southern District of Texas.

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

We are asked to review the denial of a request for remand and to determine whether summary judgment was properly entered against Plaintiff-Appellant Nutro Products. Nutro sued NCNB Texas National Bank in state court alleging breach of contract because of NCNB's refusal to extend a Standby Letter of Credit. The FDIC-Receiver intervened and removed the case to federal court. Nutro moved to remand. The court denied Nutro's motion and Nutro appeals. We find that removal jurisdiction was present and affirm denial of remand.

The district court granted FDIC and NCNB summary judgment on the basis that NCNB had no contractual duty to extend the Letter of Credit as requested by Nutro. On Nutro's appeal of the summary judgment, we find no competent summary judgment evidence suggesting that Defendant-Appellee NCNB was contractually committed to extend the expiration date of the Letter of Credit at Nutro's request. Any understanding that NCNB was committed to extend the Letter of Credit is not reflected in the bank's books and records and therefore cannot alter the written agreement. We therefore affirm the summary judgment against Nutro.

I.

Plaintiff-Appellant Nutro Products contracted with the Oil and Natural Gas Commission of India ("ONGC") to supply a product to enhance the viscosity of oil. This contract required Nutro to provide a performance bond consisting of a bank guaranty for $700,000. To acquire the bank

guaranty, Nutro entered into an Application and Agreement for Standby Letter of Credit (sometimes called the "Agreement") with a predecessor[1] of Defendant-Appellee NCNB. Pursuant to the Agreement, NCNB's predecessor issued the Letter of Credit in favor of United Commercial Bank of Bombay, India ("UCO"), and UCO issued the bank guaranty to ONGC to expire September 30, 1988. The UCO bank guaranty contained the controversial provision giving Nutro the right to extend.[2] Still awaiting delivery of some of the product in mid-September, ONGC demanded that Nutro have the bank guaranty extended to December 31, 1988, "failing which ONGC [would] take recourse to the Guarantee." 3 R. 578. Nutro requested that NCNB extend the Letter of Credit to December 31, 1988.

NCNB declined and stood by its obligation to provide the Letter of Credit only until the expiration date provided in an amendment to the Letter of Credit (November 30). NCNB did not consider itself bound by the terms of the UCO guaranty to ONGC. ONGC treated the failure to extend as a breach by Nutro of the sales contract, terminated the sales contract, and collected under the UCO bank guaranty. Nutro settled with ONGC on allegedly unfavorable terms and Nutro sued NCNB.

## II.

Nutro first challenges the district court's denial of its Motion for Remand or to Strike the FDIC's Intervention and to Remand. Having reviewed the record and the arguments on appeal, we

---

[1]Nutro originally dealt with InterFirst Bank. InterFirst's obligation on the letter of credit was transferred when InterFirst merged into First RepublicBank Houston. Defendant-Appellee FDIC was appointed receiver for First RepublicBank, and Defendant-Appellee NCNB acquired the letter of credit obligations from FDIC-Receiver via a standard Purchase and Assumption Agreement.

[2]The UCO bank guaranty provides:

> ... [O]ur liability ... SHALL REMAIN in full force up to and including 60 days after 30th September 1988 *unless extended further from time to time, for such period as may be instructed in writing by M/S Nutro International Inc.* on whose behalf this guarantee has been given.... If no ... claim has been received by us, within the 60 days of the said date/extended date, [ONGC's] right under this guaranty will cease.

3 R. 465-64 (emphasis added).

find no abuse of discretion in the district court's denial of the request to strike the FDIC-Receiver intervention nor error in the court's refusal to remand. First, Nutro's argument that the FDIC-Receiver has no substantial interest in the litigation does not address the proper issue: whether it is a proper party. *See Pernie Bailey Drilling Co. v. FDIC,* 905 F.2d 78, 79-80 (5th Cir.1990) (recognizing FDIC as proper party in case involving claims for damages against failed bank even after assignment of bank's assets via P & A Agreement); *see also* Pl.'s 1st Am.Orig.Pet., 5 R. 17, 15-14 (asserting claim based in part on a course of dealing between Plaintiff and InterFirst (NCNB's predecessor) and its successors). Additionally, the court did not lose its removal jurisdiction upon the subsequent amendment to Nutro's complaint. *See* 12 U.S.C. § 1819(b)(2)(B) (recognizing FDIC's right to remove state court case to federal court); *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1254 (5th Cir.1990) (determining existence of removal jurisdiction by looking at the complaint at the time of the removal); Mot. Leave to File Am.Compl., 5 R. 55, 54-53 (explaining how amendment aimed to eliminate any claim affecting the FDIC-Receiver so that the intervention might be stricken and the case remanded).

## III.

The dispositive issue on the summary judgment motion is whether any evidence suggested that NCNB was contractually committed to extend its Letter of Credit upon Nutro's request. The initial question we must answer is from what sources we ascertain NCNB's contractual obligations.

The district court considered the Letter of Credit and its amendment only and did not consider the provisions of the Agreement or UCO's guaranty pertaining to extension of the term. Nutro argues that the obligation to extend derives not only from NCNB's Letter of Credit, but also from the Application and Agreement and the bank guaranty referenced in that Agreement. NCNB contends, however, that a provision of the Uniform Customs and Practice for Documentary Credits ("UCP") precludes our consideration of any separate agreements even if the Letter of Credit refers to such contracts.

NCNB's reliance on the UCP is ill founded. Article 3 of the UCP, providing that banks are not bound by contracts on which letters of credit are based, would refer in this case to the underlying

sales contract or purchase order between Nutro and ONGC to supply the product. Article 3 is irrelevant to the Application and Agreement for the Letter of Credit, which was executed by NCNB's predecessor and Nutro on the same date the Letter of Credit issued.

We will therefore consider both the Application and Agreement as well as the Letter of Credit itself in determining NCNB's obligations. *See Calpetco, 1981 v. Marshal Exploration, Inc.,* 989 F.2d 1408, 1412 (5th Cir.1993) (construing together two written instruments executed at the same time for the same purpose). This does not mean, however, that every provision in each instrument applies equally to the other instrument being considered. *Richland Plantation Co. v. Justiss-Mears Oil Co.,* 671 F.2d 154, 156 (5th Cir.1982). NCNB does not seriously contest that it is bound by the terms of the Agreement. The Letter of Credit merely implements the Agreement; the Agreement is the very contract under which Nutro owed reimbursement to NCNB in the event the Letter of Credit was called. The real point of contention is the interpretation of the Agreement, especially its references to the attached bank guaranty. Specifically we are asked whether the right to extend the expiration date in the bank guaranty was incorporated by the Agreement into NCNB's obligations under the Letter of Credit.

The Agreement between Plaintiff and NCNB provided that a Letter of Credit was to be issued to UCO in Bombay as follows: R. 493.

We interpret the typed paragraphs of the Agreement as contemplating two documents in two separate formats: 1) a performance bond to ONGC to be in the precise form given in the attachment, and 2) a Letter of Credit in favor of the bank issuing such bond[3] to be in NCNB's "standard format."

Nutro argues that the form's printed paragraph incorporating "attached supplements" as part of the "terms and conditions" requires the Letter of Credit to be coterminous with the performance bond, also called the bank guaranty. We hold that this Agreement does not require that the two documents have coextensive terms. The Agreement plainly contemplates that the Letter of Credit

---

[3]In context, the request in the first paragraph to "issue a performance bond" is not a request that Interfirst itself issue the bond. Interfirst is to provide the letter of credit as described in the second paragraph to the issuing bank, UCO, so that UCO will issue the performance bond as per the attachment. We disagree with Nutro's suggestion that the Application and Agreement required Interfirst to issue the bond.

will expire on September 30, 1988 in Bombay and 60 days thereafter in Houston.  This date especially typewritten onto the Agreement for this particular contract more clearly evidences the parties' intention than does the fine print on the standard form.  *See Southland Royalty Co. v. Pan Am. Petroleum Corp.,* 378 S.W.2d 50, 57 (Tex.1964) (recognizing that in contract interpretation, writing or typewriting prevails over printed provisions).  The bank guaranty, according to the attachment, is to expire 60 days after September 30 and is to include the issuing bank's obligation to extend the expiration of the guaranty upon Nutro's written request.  *See* 3 R. 489-88 & *supra* note 3.  The Agreement therefore did not contractually bind NCNB to issue a Letter of Credit conforming to the terms of the guaranty.

On June 5, the same date as the Agreement, NCNB's predecessor transmitted via tested telex the Letter of Credit to UCO along with a request  that UCO issue a performance bond in favor of ONGC to expire September 30 in Bombay and November 30 in Houston.  3 R. 675.  The telex then quoted in full the precise form for the bond or guaranty as requested by Nutro, taken from the attachment to the Agreement.  3 R. 674-72.  After the signature blocks for the guaranty and the word "unquote" signifying the end of that form, the telex continued with the provision for the Standby Letter of Credit from NCNB to UCO:  "We, Interfirst Bank Houston, N.A., hereby issue our irrevocable standby credit No. 2046 in your favor for seven hundred thousand and no/100 U.S. dollars (USD700,000.00)."  3 R. 671.  Notwithstanding the Agreement that NCNB would issue a Letter of Credit expiring on September 30 in Bombay, the Standby Letter of Credit as issued contained *no* expiration date.  *Id.*  The only expiration date appeared in the first part of the telex, the request that USO issue the letter of guaranty to ONGC.

The discrepancy between the Agreement (that the Letter of Credit is to expire September 30) and the Letter itself (which contained no expiration date) is not at issue today.  The Letter of Credit was subsequently amended at UCO's request to include an expiration date:  November 30, 1988, at the counters of UCO in Bombay and December 15, 1988, at the counters of NCNB's predecessor in Houston.  3 R. 474, 668.  This amendment ("Operative Amendment 2") to the Letter of Credit was telexed to UCO on June 9.  Neither the request for amendment nor the amendment itself provided

Nutro the right to extend the expiration date.

On June 11, UCO executed its bank guaranty to ONGC using the form requested by Nutro in the attachment to the Agreement and as quoted in the June 5 NCNB-to-UCO telex. The guaranty thus was to expire 60 days after September 30 and gave Nutro the right to extend the guaranty by written request ("as may be instructed in writing by" Nutro). 3 R. 465.

We find no contractual obligation of NCNB to extend the Letter of Credit upon Nutro's request, explicit or implicit, in the Letter of Credit as amended or in the Application and Agreement with attachments. The Agreement's reference to the attachment signifies the intention that the bank guaranty follow the format and contain the terms—including the expiration date and obligation to extend—set forth in the attachment. The bank guaranty did follow that format and contain those terms. These documents manifest no intention that the Letter of Credit have a similar expiration date or extension provision. Plaintiff's contention that the Letter of Credit and supporting documents manifest the obligation of NCNB to extend the expiration date of the Letter of Credit is without merit.

## IV.

Nutro also alleges error in the court's failure to apply Texas rules of construction by considering the surrounding circumstances in determining the "apparent intent" of the parties or in determining whether the documents are ambiguous. Nutro offered affidavits attesting that some individuals expected the bank to be bound or considered the bank bound by the term in UCO's guaranty.[4]

The written documents, however, do not so bind the bank to that term. Regardless of Texas law on the subject, under the *D'Oench* doctrine,[5] all controlling agreements must be in the bank's

---

[4]Nutro offered testimony of Nutro officers and Interfirst officers that under the terms of the "contract documents" NCNB was obligated to extend the Letter of Credit upon Nutro's request, that the terms of the bank guarantee were attached to the Agreement in order to make the contractual obligation of Interfirst coextensive with the term of the UCO bank guaranty, and that the guaranty and the Letter of Credit utilized coextensive terms because Interfirst was obligated to reimburse UCO if UCO had to pay ONGC under the guaranty. 2 R. 809-07, 840-38.

[5]*D'Oench Duhme Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

books and records.

Nutro maintains that *D'Oench* does not apply because the obligation to extend the Letter of Credit upon Nutro's request is included in the terms of the written documents. Yet we find no such obligation reflected on the face of the documents available in the bank records. *See Clay v. FDIC,* 934 F.2d 69, 73 (5th Cir.1991). The written documents do not reflect that Nutro could unilaterally extend the expiration date in NCNB's Letter of Credit. If such a right to extend the expiration date was agreed, it was based only on some unwritten understanding that the terms of the Letter of Credit would mirror the terms of the UCO bank guaranty. *D'Oench* therefore precludes our consideration of the parties' unwritten understanding.

Finally, we find no exception to *D'Oench* applicable. *E.g., Jackson v. FDIC,* 981 F.2d 730, 733 (5th Cir.1992) (rejecting defense-versus-claim distinction and holding that *D'Oench* may bar affirmative claim as well as defense); *FDIC v. Payne,* 973 F.2d 403, 407 (5th Cir.1992) (recognizing that the "wholly innocent" party exception to *D'Oench* has been destroyed by the Supreme Court). Plaintiff's remaining arguments are without merit.

The judgment of the district court is

AFFIRMED.